AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: /s/Daniel Gridley, Jr. 2-18-26

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED

FEB 1 8 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY MW, DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A Rose Gold Apple iPhone, model unknown, IMEI unknown, seized from Clayton Lamont Moore, Jr., and currently in the custody of ATF located at 122nd St., Oklahoma City, OK 73114

Case No. M-26- 95 -SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| 21 U.S.C. § 841(a)(1) | Possession of Controlled Substance with Intent to Distribute |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ___________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Tyler Perry, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/18/26

[signature]
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF (1) ROSE GOLD APPLE IPHONE, MODEL UNKNOWN, IMEI UNKNOWN, SEIZED FROM CLAYTON LAMONT MOORE, JR., AND CURRENTLY IN CUSTODY OF ATF LOCATED AT 901 NE 122ND ST., OKLAHOMA CITY, OK 73114** | **Case No. M-26-** 95 **-SM** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION**
**UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Tyler Perry, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. Your Affiant, Special Agent Tyler Perry, is a federal agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), where I have been employed since 2025. I am currently assigned to the Oklahoma City field office. I have received training through the Federal Law Enforcement Training Center (FLETC) to include the Criminal Investigator Training Program (CITP) and ATF Special Agent Basic Training (SABT). Prior to my career with ATF, I was a law enforcement officer in Chesapeake, Virginia

where I was employed from 2022 until 2025. As a Special Agent with ATF, I am vested with the authority to investigate violations of federal laws including Title 18 of the United States Code.

3. As a result of my training and experience, I am well versed in a variety of investigative methods, including the use of confidential sources, interviews, arrests, search warrants, and the analysis of cellular phone data. As a federal agent, I am authorized to investigate violations of United States laws, to execute warrants, and to make arrests under the authority of the United States.

4. This affidavit is based on my personal knowledge and on information I have learned, either directly or indirectly, from witnesses, records, and other law enforcement officers and agents. Furthermore, this affidavit is intended to show sufficient probable cause exists for the requested warrant but does not set forth all my knowledge about this matter. As such, I have not included every fact known to me concerning this investigation, but rather, included only those facts necessary to show probable cause.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a rose gold colored iPhone smart cellular phone with a "Chucky" case (Device) seized from Clayton Lamont Moore Jr. (MOORE). The Device was seized from MOORE's front pocket following his arrest at approximately 2:25 P.M. on February 12, 2026. The Device is currently in ATF custody in the Western District of Oklahoma and has been in ATF custody since February 12, 2026.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

7. Based on the facts set forth in this Affidavit, there is probable cause to believe the Device contains evidence of crimes committed by MOORE, specifically, violations of 18 U.S.C. § 922(g)(1).

**PROBABLE CAUSE**

8. Based on my investigation, MOORE was confirmed to be a convicted felon in Oklahoma County District Court case number CF-2020-0122, assault and battery with a deadly weapon, assault and battery with a deadly weapon, using a vehicle to facilitate the intentional discharge of a firearm (drive-by shooting), unauthorized use of a vehicle, and possession of a firearm after juvenile adjudication. MOORE was convicted in this case on October 14, 2020.

9. On December 6, 2025, Oklahoma City Police Department (OCPD) responded to a reported burglary in Northwest Oklahoma City. The victim advised they left for work on December 5, 2025, at 4:00 p.m. and arrived back home on December 6, 2025, at 3:00 a.m. Upon entering their house, they noticed the house was "ransacked". The victim noticed many of their "collectible" items were missing along with three firearms. The three firearms stolen were listed as a Sig Sauer P320 9mm with a red dot optic, Bushmaster AR-15 style rifle, and a Smith and Wesson .22 caliber revolver. Mr. Hahn was not aware of the serial numbers of each firearm.

10. During the investigation, OCPD detectives received information that indicated Clayton MOORE participated in the burglary on December 6, 2025. OCPD found through additional interviews that MOORE was staying in an apartment in Oklahoma City. On January 8, 2026, officers with OCPD conducted surveillance of the apartment building and noticed MOORE moving trash bags and boxes out and into a vehicle. Officers observed MOORE sit in the front passenger seat of a car just before it left the complex. Officers conducted a traffic stop on the vehicle after it was observed crossing over lane markers and having an obstructed license plate. During the traffic stop, the driver granted consent to search the vehicle. During the search, officers found items that were reported stolen in the burglary on December 6, 2025.

11. One of the stolen items located during the vehicle search was an unloaded Sig Sauer P320 9mm pistol bearing serial number 58B184506 with a red dot optic in a box on the rear driver's side passenger floorboard. A Sig Sauer magazine containing 15 rounds of 9mm ammunition and a black hooded sweatshirt bearing a strong resemblance to the one seen in video screenshots from the burglary were also found in the back seat of the car near the pistol. Officers also located masks, gloves, and head wraps in a bag with MOORE's previous booking wrist band in the back seat of the car. During the search of the vehicle, a pink package containing multiple unidentified white pills was located.

12. The victim of the burglary was called to the scene to identify the stolen items. The victim advised officers that the firearm box had specific masking tape affixed to it. The victim arrived on scene and positively identified the firearm as his along with the other property.

13. In a previous traffic stop conducted by OCPD on November 26, 2025, MOORE fled from police but eventually surrendered. After MOORE had been placed in custody, officers conducted an inventory of the vehicle. During the investigation, MOORE was found to be in possession of approximately 293.8 grams of marijuana and a pistol. MOORE admitted he intended to sell the marijuana.

14. On January 8, 2026, a recorded phone call was made to 405-861-9709 at approximately 4:10pm from the Oklahoma County Detention Center Front Tank 1 Right wall phone. According to Oklahoma Department of Corrections records, 405-861-9709 is a cellular number for Clayton Moore Sr., MOORE's father. Additionally, law enforcement located other sources of data that currently listed 405-861-9709 as a phone number for Clayton Moore Sr.

15. During the call Clayton Moore Sr. refers to the calling party multiple times as "Clayton". The calling party, believed to be MOORE, repeatedly referred to Clayton Moore Sr. as "daddy". In the phone call, Moore Sr. asks MOORE, "whose pistol was it," speaking about the firearm that MOORE was caught possessing. MOORE responded, "I bought it off somebody," referring to the stolen firearm found in the vehicle by law enforcement on January 8, 2026.

16. During this investigation I reviewed audio and video footage of MOORE's arrest and listened to multiple audio recorded jail calls linked to MOORE's jail phone account. I know that when individuals are booked into jail, they are allotted the opportunity to make phone calls without having their account set up in their name yet. In this instance, MOORE's account was not set up when he was making the phone call on January 8, 2026,

at approximately 4:10 PM, however; the voice believed to be MOORE bears an uncanny likeness to known voice recordings of MOORE.

17. ATF SA Brian Anderson, a Firearms Interstate Nexus Examiner, reviewed the firearm found in MOORE's possession. He opined, based upon his training, experience, and examination of the firearm markings, that the firearm was not manufactured in Oklahoma and therefore crossed state lines to reach the state of Oklahoma, thereby affecting interstate commerce.

18. Based on my training and experience, I know individuals who possess firearms or possess possible stolen firearms often take photographs, videos and/or use other forms of electronic documentation in furtherance of the possession or sale of such items. Furthermore, the Device may contain photographs, videos, messages, and other data which may assist in the identification of co-conspirators and the recovery of valuable evidence related to the possession or sale of firearms.

## **TECHNICAL TERMS**

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number,

date, and time of calls made to and from the phone. In addition to enabling voice communication, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play

audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

20. Based on my training, experience, research, and from consulting the manufacturer's advertisements and product technical specifications available online, I know the Device has capabilities allowing it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices, such as the Device, can store information for long periods of time. Similarly, things viewed via the internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

22. Further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence establishing how the Device was used, the purpose of use, who used it, and when it was used. There is probable cause to believe this forensic electronic evidence is located on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

23. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

## CONCLUSION

24. Based on the above information, there is probable cause to believe MOORE committed a violation of 18 U.S.C. § 922(g)(1), and evidence of this offense is located on the Device. Therefore, I respectfully request that this Court issue a search warrant for

the Device, described in Attachment A, authorizing the seizure of the items described in Attachment B.

Respectfully submitted,

Tyler Perry
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on 18th day of February 2026.

SUZANNE MITCHELL
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is one (1) rose gold Apple iPhone with a "Chucky" case, model unknown and IMEI unknown ("**Device**"), seized from the front pocket of Clayton Lamont MOORE Jr. (MOORE) following his arrest on February 12, 2026, at approximately 2:25 P.M. The **Device** is currently located at the ATF Oklahoma City Field Office, located at 901 NE 122nd Street, Oklahoma City, Oklahoma, in the Western District of Oklahoma. The **Device** has been in ATF custody since February 12, 2026. Photos of the **Device** are below:

**Back of Device**





**Front of Device**





This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT B

1. All records on the **Device** described in Attachment A that relate to violations of 18 U.S.C. § 922(g)(1), involving MOORE including but not limited to:

a. Phone directory and/or contact lists of customers, co-conspirators, suppliers, and associates involved in narcotics distribution or firearms possession, and related identifying information including names, nicknames, addresses, phone numbers, email addresses, and social media identifiers.

b. Communications and evidence of communications, including but not limited to call logs, voicemails, text messages, multimedia messages, emails, and messages sent through applications (e.g., WhatsApp, Signal, Telegram, Facebook Messenger, Instagram, Snapchat), between the user of the **Device** and customers, suppliers, or co-conspirators.

c. Any communications referencing the acquisition, use, possession, or sale of firearms, narcotics, or proceeds from such transactions.

d. Information regarding the types, amounts, prices, dates, times, and places of marijuana sales or firearm possession in connection with drug distribution.

e. Photographs, videos, or other media depicting controlled substances, firearms, ammunition, packaging materials, scales, cash, or narcotics paraphernalia.

f. Ledgers, pay/owe sheets, notes, or other documentation of drug debts, transactions, or firearm acquisition in furtherance of drug trafficking.

g. Any information related to sources of drugs or firearms, including names, addresses, phone numbers, or other identifying information.

h. GPS coordinates, location information, cell-site data, travel routes, and mapping application history showing movements for the purpose of obtaining, delivering, or distributing narcotics and/or firearms.

i. Records reflecting the schedule or travel of the user, including but not limited to location history, calendar entries, and stored travel itineraries.

j. Bank records, checks, credit card bills, account information, money transfer records, cryptocurrency wallet data, and other financial records relating to the proceeds of drug trafficking or the acquisition of firearms.

k. Evidence identifying the person(s) who used or owned the **Device** at the relevant times, such as saved usernames and passwords, account information, email accounts, photographs or videos of the user, documents, and browsing history.

l. **Device** identifiers (IMEI, IMSI, SIM card data) to establish control of the **Device**.

m. Applications, settings, or other evidence showing attempts to delete, encrypt, or otherwise conceal communications or media related to drug trafficking or firearm possession.

n. Any other records, evidence, fruits, or instrumentalities tending to show

the commission of the above-listed offenses.

As used above, the terms “records” and “information” include all the foregoing items of evidence in whatever form and by whatever means they may have been created, stored, or maintained. This includes, but is not limited to, any form of computer or electronic storage such as flash memory, SIM cards, SD cards, or other storage media; cloud-based storage associated with the Device; and any photographic, video, or audio form.